IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| CLEARONE COMMUNICATIONS, INC., a Utah Corporation,<br><br>      Plaintiff,<br><br>vs.<br><br>ANDREW CHIANG, an individual, JUN YANG, an individual, WIDEBAND SOLUTIONS, INC., a Massachusetts corporation, and BIAMP SYSTEMS CORPORATION, an Oregon corporation,<br><br>      Defendants. | **ORDER AND**<br><br>**MEMORANDUM DECISION**<br><br><br>Case No. 2:07-cv-37 TC |

  Defendant Biamp Systems Corporation ("Biamp") has filed a Motion to Dismiss three causes of action in the Sealed Revised Third Amended Complaint ("Third Amended Complaint" or "Complaint").[1] Through this motion, Biamp seeks to dismiss the claims that Plaintiff ClearOne Communications, Inc., ("ClearOne") asserts against Biamp addressing object code that Biamp licensed from co-Defendant WideBand Solutions, Inc. ("WideBand").

  For the reasons stated more fully below, Biamp's motion is DENIED.

---

[1]Although Biamp's motion addresses the First Amended Complaint, the causes of action have not changed with the latest iteration of the Complaint.  The court considers Biamp's motion as now seeking to dismiss the same three causes of action alleged in the Third Amended Complaint.

**BACKGROUND**

Engineers develop software in source code which is readable by most programmers. Before sharing or licensing the source code, it is converted into object code which other programmers cannot decipher. Because object code is essentially unreadable, it acts solely as an executable file, keeping the underlying algorithms and commands undisclosed. See 2 Melvin F. Jager, Trade Secrets Law § 9:11 (2007) ("[T]he machine-readable 'object code' is very difficult, if not impossible, to comprehend by visual inspection. The object code can be used with a compatible computer, but the user is unaware of its inner workings and cannot alter or correct the program.").

In April of 2002, ClearOne licensed certain of its audio Digital Signal Processing ("DSP") technology to Biamp in the form of object code. Biamp incorporated ClearOne's audio DSP technology into its acoustic echo cancellation card, the widely distributed "AEC2 Card." Subsequently, Biamp entered into an agreement to license object code for audio DSP technology from WideBand ("WideBand Code"). Biamp incorporated the WideBand Code into a similar echo acoustic cancellation sound card—also widely distributed—called the "AEC2w Card."

As explained more fully in the court's Order and Memorandum Decision granting ClearOne's Motion for Preliminary Injunction, ClearOne alleges that WideBand obtained ClearOne's Honeybee Code through improper means, and in turn, ClearOne alleges that WideBand used the Honeybee Code to derive the WideBand Code (in addition to the Harman Code specifically at issue in the Preliminary Injunction).

## ANALYSIS

Biamp has moved to dismiss the three causes of action that address Biamp's use of the WideBand Code.

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007). Consequently, the court may grant Biamp's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) only if the complaint fails to state a claim upon which relief can be granted, assuming all well-pleaded factual allegations are true. Sutton v. Utah State Sch. for Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999) ("[A]ll well-pleaded factual allegations in the amended complaint are accepted as true and viewed in the light most favorable to the nonmoving party" when a court rules on a 12(b)(6) motion to dismiss.). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir. 1991). Further, a court should consider only the well-pleaded allegations, and not allow conclusory assertions to satisfy the plaintiff's burden. Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co., 407 F.3d 1091, 1107 (10th Cir. 2005) ("A motion to dismiss for failure to state a claim 'admits all well-pleaded facts in the complaint as distinguished from conclusory allegations.'") (quoting Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976)).

The court will address separately the three causes of action Biamp moves to dismiss: (A) misappropriation of trade secrets; (B) unjust enrichment; and (C) injunctive relief.

A.  Misappropriation of Trade Secrets

In the Fourth Cause of Action, ClearOne alleges that Biamp has misappropriated ClearOne's trade secrets. In response to ClearOne's claims that undisclosed source code merits trade secret protection,[2] Biamp seeks dismissal on the grounds that: (1) Biamp never had knowledge of the allegedly misappropriated trade secret because it could not read the object code; and (2) the trade secret protections were destroyed because the "object code . . . was freely distributed to Biamp customers without any secrecy restrictions." (Def.'s Mem. Supp. Mot. Dism., at 9.)

**1.  Dismissal is not Proper Even if Biamp Could not Read the Object Code**

Biamp argues that it could not have misappropriated ClearOne's trade secret because Biamp could not decipher the object code to understand any underlying secrets.

But according to the statutory text, Biamp's understanding of the underlying code and algorithm is unnecessary for misappropriation. There is no requirement of comprehension of the

---

[2]According to the Third Amended Complaint, "Old ClearOne had developed certain proprietary and trade secret computer code, computer code architecture and digital audio processing algorithms for purposes of improving and maximizing the performance and clarity of audio conferencing, which it used in its products . . . ." (Third Am. Compl., ¶ 48.) And this proprietary software derived economic value through licensing agreements. See id., ¶ 77 ("Biamp also continued to knowingly use the ClearOne trade secret technology it had obtained from WideBand, generating substantial profits in the millions of dollars").

ClearOne also alleges that its "trade secrets were and are a trade secret, in that they derive independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure or use," and that "ClearOne trade secrets have been and are the subject of efforts by Plaintiff that were and are reasonable under the circumstances to maintain the secrecy of these trade secrets." (Id., ¶ 142-43.)

    These allegations align with the Utah Trade Secrets Act, which defines a trade secret as:
>information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Utah Code Ann. § 13-24-2(3).

trade secret to state a claim for misappropriation under the Utah Trade Secrets Act ("UTSA"). Rather, the UTSA defines misappropriation to include the:

> disclosure or **use of a trade secret** of another without express or implied consent by a person who: . . . (ii) at the time of disclosure or use, knew or had **reason to know** that his knowledge of the trade secret was: . . . (A) derived from or through a person who had **utilized improper means** to acquire it . . . .[3]

Utah Code Ann. § 13-24-2 (emphasis added).  In turn, the statute explains that "'improper means' includes . . . breach . . . of a duty to maintain secrecy . . . ." Id.

The Third Amended Complaint alleges that WideBand acquired the WideBand Code through improper means.  Specifically, ClearOne alleges "that the audio DSP technology being **licensed by Biamp from WideBand** constitutes and includes the ClearOne trade secrets, and which were among the assets sold under the APA and were also **subject to the Yang Confidentiality Agreement**."  (Third Am. Compl., ¶ 79 (emphasis added).)  The Complaint further alleges that "WideBand has used the ClearOne trade secrets in all of its AEC products, including without limitation the WideBand Code licensed to Biamp for use in the AEC2w card . . . ."  (Id., ¶ 80.)  And according to the Complaint, "[n]one of the Defendants have [sic] permission to use any of the ClearOne trade secrets, for any purpose."  (Id., ¶ 81.)

Moreover, the Complaint alleges that Biamp knew—or should have known—of WideBand's improper means over two years ago.  According to the Third Amended Complaint,

---

[3]Although the UTSA uses the phrase "knowledge of the trade secret," there is no authority that this phrase creates an element of comprehension.  Rather, this phrase is generally understood to reflect knowledge that the trade secret was derived through improper means.  See 2 Melvin F. Jager, Trade Secrets Law § 2:03 (explaining that under language identical to the UTSA, "[l]iability . . . attaches only in the event that it can be proved that the defendant **used or disclosed the trade secret after having actual knowledge or reason to know that the information was improperly obtained**.") (emphasis added).

"Biamp was on notice by <u>at least</u> September 2005 that WideBand was licensing ClearOne's trade secret technology to Biamp, if not as early as March 2004 when the same or similar issues and discussions took place between the companies."[4]  (<u>Id.</u>, ¶ 4.)  Additionally, the Complaint gives notice to all parties that "the WideBand Code contains the trade secrets that WideBand misappropriated from ClearOne . . . ." (<u>Id.</u>, ¶ 16.)  ClearOne claims that Biamp "continues to possess the WideBand Code," (<u>id.</u>, ¶ 14) and that "Biamp has refused to agree that it will not use the WideBand Code in the future."  (<u>Id.</u>, ¶ 83.)

    Because ClearOne has alleged that over two years ago Biamp knew that WideBand derived the WideBand Code through improper means, the court need not consider whether Biamp actually understood the object code.  <u>See</u> <u>Data General Corp. v. Grumman Sys. Support Corp.</u>, 825 F. Supp. 340, 359 (D. Mass. 1993) ("Even those who obtained MV/ADEX and were able to <u>use</u> MV/ADEX were unable to discover its trade secrets because MV/ADEX was distributed only in its object code form, which is essentially unintelligible to humans.  An infringer may be liable for misappropriating trade secrets when it loads and runs a computer program in its object code form, even if the infringer never understands exactly how the program works.").

    From the time that Biamp had reason to know that WideBand misappropriated trade secrets from ClearOne, Biamp voluntarily subjected itself to the risk of litigation under the UTSA.  It is not appropriate for the court to rule at this early stage that ClearOne has no viable

---

[4]In September 2005, Defendant Lonny Bowers allegedly sent an email to Biamp that stated "[t]his algorithm has functioned successfully in the market for approximately 6 years.  Dating back to the ClearOne, Inc. phone and AccuMic still sold by ClearOne.  The WC301 has been shipping for over a year with virtually no issues relating to echo cancellation performance."  (Third Am. Compl., ¶ 73)

claim for trade secret misappropriation against Biamp.

### 2. Dismissal is Not Proper Even Though Biamp Distributed the Object Code

Biamp also argues that because the object code is publicly available, the source code is not entitled to trade secret protection. But Biamp has acknowledged that it has not been able to decipher the object code.

Because the WideBand Code was produced only in its undecipherable object code, the source code—the underlying acoustic echo cancellation code and algorithms that ClearOne contends are the trade secrets—appears never to have been publicly disclosed, and should not be categorically stripped of trade secret protection. See LinkCo, Inc. v. Fujitsu Ltd., 230 F. Supp. 2d 492, 499 (S.D.N.Y. 2002) ("Computer programs have been found to constitute a trade secret where the source code is not easily copied or ascertainable by inspection of the program."); Q-Co Indus., Inc. v. Hoffman, 625 F. Supp. 608, 617 (S.D.N.Y 1985) (finding substantial likelihood of success to support an injunction because "[t]he source code of the . . . program is not accessible to the public," even though "the object code is publically available; this the version of the program that is intended to be read by the computer and cannot be understood even by expert programmers."); see also 2 Melvin F. Jager, Trade Secrets Law § 9:11 ("Public disclosure of an object code . . . should have less impact on the viability of any trade secrets embodied in the program.").

At this early phase of litigation, the court will not rule that Biamp's public distribution of the WideBand Code—in object code format—destroys the trade secret protections of the underlying source code.

B.	Unjust Enrichment

In the Sixth Cause of Action, ClearOne seeks damages against Biamp for unjust enrichment.

Biamp argues that the unjust enrichment claim has been preempted by ClearOne's trade secret misappropriation claim.  In essence, despite urging the court to dismiss ClearOne's trade secret claim, Biamp asserts that this same trade secret claim preempts the unjust enrichment claim.

But the UTSA preempts only conflicting remedies that are based on the misappropriation of a trade secret.  As the statute states, the UTSA "displaces **conflicting** tort, restitutionary, and other law of this state **providing civil remedies for misappropriation of a trade secret** . . . ."  Utah Code Ann. § 13-24-8 (emphasis added).  Because Biamp has argued **that there was no trade secret**, and that there was no misappropriation, it stands that there can be no preemption at this phase of the litigation.

This court reached a similar conclusion in Russo v Ballard Medical Products, No. 2:05-cv-59, 2006 WL 2345868 (D. Utah Aug. 10, 2006).  The court reasoned that if the allegedly misappropriated trade secret "is not a trade secret, then it follows that [Plaintiff]'s claims of conversion and unjust enrichment will not be based on misappropriation of a trade secret." Id. at *9.  Rather than dismissing the unjust enrichment claim, "[t]he more appropriate approach is to interpret the UTSA as displacing other remedies to the extent that allegedly misappropriated information constitutes a 'trade secret,' as that term is defined by the UTSA."  Id.  The result was "consistent with the plain language of the UTSA, which provides that 'other civil remedies that

8

are not based upon misappropriation of a trade secret' are not preempted." Id. (quoting Utah Code Ann. § 13-24-8(2)(b)).

Similarly, it is premature to dismiss the unjust enrichment claim in this case. As ClearOne's counsel explained in oral argument, "if in fact it is determined that we have a trade secret, and if in fact that is the basis for the unjust enrichment claim, it ought to go, but that is for a later day." (Tr. of June 21, 2007 Hr'g, at 20.)

Because the UTSA only preempts the unjust enrichment claims if there are overlapping **valid** UTSA claims, dismissal is improper at this early stage of litigation.

C.      Injunction

Biamp also asks the court to dismiss the Tenth Cause of Action, ClearOne's request for injunction against all defendants. But as stated above, ClearOne has effectively pled a claim for misappropriation of trade secrets against Biamp. And ClearOne has alleged that Biamp has threatened future use and refuses to offer guarantees that it will not use ClearOne's alleged trade secrets. Consequently, because the UTSA expressly states that "[a]ctual or threatened misappropriation may be enjoined," Utah Code Ann. § 13-24-3(1), the claim for injunctive relief cannot be dismissed.

## ORDER

For the reasons stated, the court DENIES Biamp's Motion to Dismiss the Fourth, Sixth and Tenth Causes of Action (dkt. #126).

SO ORDERED this 13th day of December, 2007.

BY THE COURT:

TENA CAMPBELL
Chief Judge