IN THE UNITED STATES JUDICIAL DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CLEARONE COMMUNICATIONS, INC., a Utah corporation,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW CHIANG, an individual, JUN YANG, an individual, LONNY BOWERS, an individual, WIDEBAND SOLUTIONS, INC., a Massachusetts corporation, and BIAMP SYSTEMS CORPORATION, an Oregon corporation,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART MOTION FOR SANCTIONS [165]**<br><br><br>Case No. 2:07 CV 37 TC<br><br>District Judge Tena Campbell<br><br>Magistrate Judge David Nuffer |

Plaintiff ClearOne Communications, Inc. (ClearOne) made a motion for entry of sanctions against WideBand Solutions, Inc. (WideBand), Jun Yang (Yang), and Andrew Chiang (Chiang).[1]  Since the motion was filed, Lonny Bowers (Bowers) was added as a party defendant.[2]  He is also affiliated with WideBand and now is part of the group referred to collectively as the WideBand Defendants.

The motion was originally coupled with a request for mirror backup imaging of certain computers used by WideBand Defendants, and that motion was granted on an expedited basis.[3]  Imaging was sought to preserve evidence, and the use of the imaged materials has been dealt with in a separate process.[4]

---

[1] Docket no. 15, filed June 4, 2007.

[2] Redacted Revised Third Amended Complaint, docket no. 492, filed October 10, 2007.

[3] Docket no. 282, filed July 6, 2007.

[4] Memorandum Decision and Order Denying Motion for Entry of Search Protocol Order, docket no. 597, filed November 5, 2007.  Plaintiff's Second Motion for Entry of Search Protocol Order, docket no. 673, filed December 26, 2007.

The sole issue before the court on this motion is the issue of sanctions for conduct which ClearOne alleges has interfered with the litigation.  When the imaging issue came before the court, the court did not have a sufficient record to deal with the motion for sanctions.  The Court ordered that "[t]he parties shall reconvene to depose Defendant Jun Yang on issues relating to Plaintiff's motion for sanctions," and that ClearOne would thereafter make a "further submission to the Court."[5]  The submission was made,[6] and WideBand Defendants have responded.[7]

ClearOne asks that "[t]he Court . . . impose severe sanctions, award ClearOne its attorney fees and costs, and reserve the right to impose additional, severe sanctions."[8]  The two areas of offense are alleged to be WideBand Defendants':

1. "stripping" "[c]omments from the source code they produced in this case;" and

2. "withholding a 'smoking gun' document . . . which confirms that not only did WideBand steal ClearOne's trade secrets for the product licensed to Biamp Systems Corporation (Biamp), but that WideBand has also used ClearOne's trade secret algorithm in its other products."[9]

The latter document was produced in discovery by Biamp, another party to this litigation.[10]  The alleged "comment stripping" was discovered in May 2007.[11]

---

[5] Sealed Order Regarding July 3, 2007 Hearing at 7, docket no. 282.

[6] Supplemental Memorandum per the Court's July 6, 2007 Order in Support of Plaintiff's June 4, 2007 Motion for Sanctions (ClearOne's Supplemental Memorandum), docket no. 637, filed under seal November 29, 2007.

[7] WideBand Defendants' Supplemental Memorandum Regarding Plaintiff's Motion for Sanctions No. 165 (WideBand's Supplemental Memorandum), docket no. 732, filed under seal January 29, 2008.

[8] Memorandum in Support of Plaintiff s Motion for Sanctions and to Compel Immediate Backup and Imaging of Wideband Defendants' Computers (Supporting Memorandum) at 6, docket no. 170, filed under seal June 4, 2007.

[9] *Id.* at 1.

[10] *Id.* at 4.

[11] *Id.* at 1-2.

Plaintiff's expert determined in reviewing the code provided by WideBand that it bore certain similarities to Texas Instruments library code which contained comments – but the WideBand Code had no comments.[12] Thus, ClearOne's expert suspected that all of the WideBand Code probably had comments at some point. This was confirmed by an exchange of letters between counsel in May 2007.[13]

### September 5, 2005, Email

The so-called "smoking gun" email was written by Lonny Bowers on September 5, 2005.[14] Bowers is one of the founders and principals of WideBand.[15] The email was only discovered in documents produced by Biamp, the *recipient* of the email, not in any discovery from WideBand Defendants. WideBand Defendants explain that the computer system used by Bowers does not retain copies of email *sent* by Bowers.[16] For any business this is a significant irregularity; almost unimaginable for a technology company; and even more unlikely for a person of Bowers' importance in such a company. Nonetheless, it does not appear that the September 5, 2005, email was withheld by WideBand Defendants – they did not have any copies of emails sent by Bowers.

---

[12] Declaration of Thomas Makovicka ¶ 22, attached as Exhibit M to 170.

[13] Letter from J. Magleby to WideBand Defendants' Counsel (May 29, 2007), attached as Exhibit A to Supporting Memorandum and Letter from P. Gilmore to J. Magleby (May 31, 2007), attached as Exhibit B to Supporting Memorandum.

[14] Email from L. Bowers to M. Czyzewski (Sept. 5, 2005), produced by Biamp as BIAMP0031330, attached as Exhibit D to Supporting Memorandum.

[15] Declaration of Lonny Bowers ¶¶ 2-3, docket no. 116, filed March 29, 2007.

[16] Memorandum in Opposition to Plaintiff's Motion for Sanctions and to Compel Immediate Backup and Imaging of the Wideband Defendant's Computers (Opposition Memorandum) at 23, docket no. 247, filed under seal June 22, 2007; Declaration of Lonny Bowers ¶15 at 7-8 attached to docket no. 248 filed under seal June 25, 2007.

**Comments to Source Code**

ClearOne was given leave to conduct expedited discovery early in this case.[17]  As part of this discovery, ClearOne sought the WideBand Code, which it defined as "any and all versions, derivatives, and forms of the computer code, including without limitation, all executables and all source code, machine code, object code, or other code, licensed and given to Biamp for incorporation into Biamp's products by WideBand."[18]  That is, ClearOne was seeking copies of allegedly infringing code provided by WideBand Defendants to a third party, Biamp, a customer of WideBand.  The specific requests were:

> REQUEST NO.3: A copy of the source code of each version of the WideBand Code given to Biamp by WideBand.
>
> REQUEST NO.4: All documents reflecting or relating to the process of acquiring and/or developing the WideBand Code. This response should include, without limitation, any flow diagrams, block diagrams, or software, firmware, or hardware documentation related to any WideBand code, whether or not such code became the WideBand Code.[19]

"On April 10, 2007, the WideBand Defendants produced a single version of the WideBand Source Code."[20]  On April 20, 2007, Yang's deposition was taken, as a 30(b)(6) representative of WideBand Solutions, Inc.[21]  In that deposition, he was asked many questions about the source code.

---

[17] Memorandum Decision and Order Granting Motion for Leave to Conduct Expedited Discovery, docket no. 67, filed March 7, 2007.

[18] Plaintiff's First Request for Production of Documents . . . at 3, attached as Exhibit A to Memorandum in Support of Motion for Expedited Discovery, docket no. 13, filed February 7, 2007.

[19] See Plaintiffs First Request for Production of Documents to Defendants Andrew Chiang, Jun Yang, and WideBand Solutions, Inc. per March 7, 2007 Order ("Plaintiffs First Requests") at 8 (Requests No.3 & 4), attached as Exhibit F to Supporting Memorandum.

[20] Supporting Memorandum at 25.  *See* Letter from P. Gilmore to J. Magleby (April 10, 2007), attached as Exhibit G to Supporting Memorandum.

[21] Deposition of Jun Yang (April 20, 2007), attached as Exhibit C to Supporting Memorandum.

Q      All right. As a side note would you agree with me you did not put a lot of comments into this source code?

A      No, I don't.

Q      You don't use comments?

A      Not.

Q      Not much?

A      Not much.

Q      Okay. So there is not another set of this source code somewhere that has more comments in there, is there?

A      No.?[22]

Q      Doctor, what I think you are telling me is that you generally do not use comments when you write source code; is that correct?

A      Not often.

Q      Not often, okay. So there might be some comments in here, but you would not expect to find a lot of comments; is that correct?

A      Right.

Q      Okay. I assume then there is not some other set of source code somewhere that has more comments in it?

A      No. About this code, yes, no.

Q      There is no other set?

A      No.

Q      We have it with all the comments?

A      Right.[23]

Over and over again, the issue of different "versions" of the code was discussed.[24]

And other sources of information for the source code were discussed.

---

[22] *Id.* at 199:8-19.

[23] *Id.* at 201:2-18.

> Q   You provided source code and we looked at the printout of the print screen for the source and object code. Right?
>
> A   The source code?
>
> Q   Yes.
>
> A   Yes.
>
> Q   There is no other source or object code for the Wideband Biamp product?
>
> A   No.
>
> Q   You have given it all to us. Correct?
>
> A   No.
>
> Q   No?
>
> A   There is no something gave to us, no.
>
> Q   Okay. Let me ask again.
>
> A   Okay.
>
> Q   You have given us and produced in this case as far as you know all the source code and all the object code that you have relating to the Wideband Biamp project. Correct?
>
> A   Yes.
>
> Q   Okay. Have you looked through your files in your office to determine if you have any other documents that relate to this matter?
>
> A   No, there is no thing too. No more.
>
> Q   There is no more. You produced everything you have as far as you know to your counsel?
>
> A   Yes.[25]

Of course, as it was discovered at the end of May, there *was* another copy of the source code and it *does* contain comments. Very shortly after this discovery, the source

---

[24] *Id.* at 227:12-24.

[25] *Id.* at 246:8-247:11.

code with comments was provided to ClearOne. This motion was filed, and at a hearing on imaging, the court directed Yang's deposition be reconvened to make a record as to why the code with comments was not produced and why Yang denied its existence in his deposition.

> At the reconvened deposition, Yang testified that, at the time he created the production disc, he knew that there was a version of source code with Comments, but made a conscious decision to produce only the version of source code with the developer Comments removed. Specifically, Yang opened up the backup CD and made a conscious choice to copy only the source code from the "aec2w" folder, and not the source code from the "C6713" folder, a folder that he knew contained the version of the source code with developer Comments.[26]

At the very end of Yang's April 20, 2007 deposition, WideBand's counsel discussed a backup CD created when a laptop Yang was using was cycled out of use in 1996. WideBand Defendants' counsel said:

> He probably does not have that in his mind as you are asking the question. When we all go back to read the transcript at some point in the future it comes to my mind now there is that other disk. Its possible assuming he can find that disk that there might be another version of object code available on that disk. So that is a possibility.[27]

However, nothing was delivered until over a month after the deposition, after ClearOne's expert became sure there was a version with comments, and after the demand for production was made. After ClearOne sent the May 28 email, "Dr. Yang searched the files which he considers to be his personal library files, and located files that contain both source code, and his comments."[28]

---

[26] Deposition of Jun Yang at 44:16 – 47:19 (Oct. 1, 2007), attached as Exhibit B to ClearOne's Supplemental Memorandum.

[27] Deposition of Jun Yang at 247-248 (April 20, 2007).

[28] Declaration of Dr. Jun Yang in Opposition to Motion for Sanctions and to Compel (Declaration of Dr. Jun Yang) at 17, dated June 20, 2007, attached to Opposition Memorandum as Exhibit 1; Opposition Memorandum at 4.

Much of the argument in the papers on this motion for sanctions centers on the use and meaning of the word "versions."[29] Giving Yang the benefit of the doubt, it is still clear that he denied, under oath and repeated questioning, that there were any comments to the source code. The court also believes that the fair reading of Yang's testimony is that he was denying, on April 20, 2007, the existence of any copy or version of the source code – other than that produced ten days before that deposition. This is the only way to reasonably interpret the sum of the testimony offered by the parties in their memoranda filed before the second Yang deposition.

The second deposition did not clarify the issues. It merely reinforced the parties' positions. ClearOne tried to get Yang to admit there were two "versions" and Yang's counsel interposed speaking objections to make Yang's defensive position clear.[30]

### Sanctions for Missing September 5, 2005 Email

WideBand Solutions, Inc., did not maintain an email storage system that would retain a copy of the September 5, 2005 email. No evidence suggests that this was done in bad faith, but is rather the effect of design of the email system WideBand employed. However questionable the design may be, the effect is that the routine operation of the WideBand computer system did not capture the email. No sanction is needed on this point, as ClearOne is free to establish at trial that no one has complete access to or knows the entire contents of Bowers' sent email. Each party will be free at trial to argue the implications of that fact.

---

[29] Opposition Memorandum at 13, WideBand's Supplemental Memorandum at 6-10.

[30] ClearOne's Supplemental Memorandum at 9 n.2. Deposition of Jun Yang at 19:21-20; 18:14-23 (Oct. 1, 2007). WideBand Defendants' counsel repeatedly objected to the use of the word version and any questions seeking to explore the issues for which the magistrate judge ordered a second deposition. ClearOne's Supplemental Memorandum at 25-37.

**Sanctions for Yang's Misrepresentations**

WideBand Defendants make much of the fact that they produced the code with comments very quickly after it was demanded by ClearOne.[31] This is commendable. But it does not resolve Yang's misrepresentations at his April 20th deposition. Next, the question is what sanction is appropriate. IN considering sanctions,

> a court should ordinarily consider a number of factors including: (1) the degree of actual prejudice to the [other party]; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions.[32]

*Culpability*

WideBand Defendants suggest that the discovery requests were entirely misunderstood. "Dr. Yang did not understand the Plaintiff was seeking the intangible indicia of methodologies Dr. Yang considers separate from the source code."[33] "The WideBand Defendants timely produced to the Plaintiff the only source code they believed to be responsive to the Plaintiff s discovery requests, which was embodied in the source code files created in anticipation of a sale to defendant Biamp in 2005."[34] However, Request No. 4 clearly asked for this information. The questions at the April 20, 2007 deposition were clearly directed toward comments and other files containing the code. The existence of the comments could not have slipped Yang's mind as he testified that the comments were important intellectual property he intended to withhold from

---

[31] Opposition Memorandum at 5, 8, 13-14.

[32] *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992).

[33] Opposition Memorandum at 4.

[34] Declaration of Dr. Jun Yang ¶ 12; Opposition Memorandum at 3.

Biamp.[35]  And the comments were so voluminous that it must have taken a great deal of time – more than one day – to remove them.[36]

In reviewing these transcripts and determining sanctions, the magistrate judge is aware that "English is defendant Yang's third language. His native language is Chinese. He later learned Japanese, and then English, which he failed in college."[37]  Language problems cropped up numerous times.[38]  However, the careful and even tedious examination of Yang in both depositions makes clear the points on which this decision is entered.  In spite of the possible confusion about "version," the discussion of comments and other materials relating to the WideBand Code is clear.  It is clear that Yang misrepresented his use of comments in writing code, the existence of comments for the WideBand Code, and the existence of other sources for the WideBand Code other than the file delivered to ClearOne April 10, 2007.

*Materiality and Prejudice*

WideBand claims there is no misrepresentation and that if there was, it is not material.  "In any event, ClearOne has not established that Dr. Yang 'lied' in the 30(b)(6) deposition, or intentionally concealed evidence.  Indeed, ClearOne has not even identified a logical motivation for Dr. Yang to have done so."[39]

However, it is clear that the existence of the comments and their content are material facts.  ClearOne has shown that the stripped comments conceal, at least in part,

---

[35] Deposition of Jun Yang at 84:3-87:8 (Oct. 1, 2007).

[36] Deposition of Jun Yang at 96:15-98:4 (Oct. 1, 2007).

[37] Deposition of Jun Yang, at 19-22 (April 20, 2007).

[38] ClearOne Supplemental Memorandum at 11.

[39] WideBand's Supplemental Memorandum at 6.

the origin of some of the source code.[40] The comments were stripped in violation of the terms of permissive use for that code.[41] This is not the copyright at issue here, but it is a copyright pertinent to the code at issue.

Yang's misrepresentation of use of comments in writing code, the existence of comments for the WideBand Code, and the existence of other sources for the WideBand Code other than the file delivered to ClearOne on April 10, 2007 are material and significant misrepresentations. As such, they materially interfere with the litigation process.

*Warnings and Lesser Sanctions*

There have been no warnings in this case, so entry of judgment is not a proper remedy. Lesser sanctions are appropriate – but they are still significant to be proportionate to the harm done.

Vigorous representation of clients requires that the best facts be emphasized and that the worst facts be left for the other side to emphasize, but the truth-seeking process, is more important than the duty of representation and is the context in which the duty of representation exists. Vigorous representation and selective emphasis of facts cannot be permitted to interfere with the truth-seeking mission of the courts. The rules of disclosure and discovery reflect the obligations of counsel and parties to be forthcoming, truthful, and cooperative as part of the larger goal of "the just, speedy, and inexpensive determination of every action."[42] WideBand and Yang have violated fundamental requirements of litigants.

---

[40] Supporting Memorandum at 16.

[41] *Id.* at 22.

[42] Fed. R. Civ. P. 1.

## Instruction

The trier of fact in this case should be instructed in language similar[43] to this:

> Parties in civil cases such as this have obligations to provide information in response to requests from the other party, and to answer questions truthfully under oath in depositions, where parties may ask questions witnesses. Dr. Jun Yang did not answer some questions truthfully under oath in his deposition related to the existence of comments to the WideBand source code. This is serious interference with the truth-seeking process in the case and evidences the risk that parties may not be entirely trustworthy. You are the sole judges of credibility of parties and witnesses, but you may consider that the court has found that Dr. Jun Yang did not answer some questions truthfully under oath in his deposition related to the existence of comments to the WideBand source code.

This is a serious remedy for a serious situation. It is not a dispositive or case-terminating remedy, but it is significant. Such a jury instruction will have a considerable impact on the jury. However, this is appropriate, given the nature of Yang's interference with the truth seeking process in this case. Any lesser sanction would not be proportionate to the effect of Dr. Yang's deliberate misrepresentation.

## Monetary Sanctions

ClearOne sought an award of fees and costs incurred in:

1) mirror-imaging and inspecting Defendants' computers,
2) reconvening the deposition of Yang,
3) preparing and attending the July 3, 2007 hearing, and
4) bringing the instant motion for sanctions . . .
5) meet and confer efforts and
6) motion practice derivative of the instant motion for sanctions, such as (for example) efforts to establish a search protocol.[44]

However, this broad range of fees is not related to the specific misrepresentations by Dr. Yang. The fees and expenses related to the filing, briefing and supplemental briefing of this motion for sanctions, including the supplemental memorandum are

---

[43] The posture of the case at trial and the context of the instruction may necessitate modifications to render it consistent with other instructions and terms in use in the instructions and in the case at the time of trial.

[44] ClearOne's Supplemental Memorandum at 3 (paragraph divisions added).

completely connected to the misrepresentations. While some of the original motion and memorandum related to imaging, the court will compensate by denying fees and expenses related to the July 3, 2007, hearing at which imaging was the principal subject, even though sanctions were discussed. Only one-half of the fees and expenses of the second deposition of Dr. Jung will be awarded as this deposition would likely have been reconvened for other purposes, but much of the lengthy and somewhat obstructed examination of Dr. Jung was made necessary by his untruths in the first deposition. The imaging would likely have occurred regardless of the sanctionable conduct. The expenses of imaging and establishing a search protocol are excluded from any award under this order. No fees or expenses related to the meet and confer effort will be awarded, because there was relatively little and because the magistrate judge wants to encourage time spent in those efforts.

## ORDER

IT IS HEREBY ORDERED that the motion for sanctions is GRANTED IN PART. On or before March 21, 2008, ClearOne may file the statements of expenses called for in this order, and on or before April 4, 2008, WideBand Defendants may file any response.

Dated this 9th day of March, 2008.

BY THE COURT

_____
Magistrate Judge David Nuffer