IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| CLEARONE COMMUNICATIONS, INC.,<br><br>Plaintiff,<br><br><br>vs.<br><br><br>ANDREW CHIANG; JUN YANG; LONNY BOWERS; WIDEBAND SOLUTIONS, INC.; and VERSATILE DSP, INC.,[1]<br><br>Defendants.<br><br><br>DONALD BOWERS,<br><br>Interested Third-Party. | CIVIL CONTEMPT ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br><br>Case No. 2:07-CV-37-TC |

Although a final judgment has been entered in this trade secret misappropriation case, the court has ancillary jurisdiction to enforce its orders and judgment through contempt proceedings such as the matter now before the court.[2]

On May 27, 2010, after proper notice, the court held a civil contempt hearing concerning the actions of interested third party Donald Bowers. Mr. Bowers refused to appear personally

---

[1]The court does not list Biamp Systems Corporation as a defendant because this case is officially closed and none of the court's post-judgment contempt proceedings concern Biamp.

[2]See Peacock v. Thomas, 516 U.S. 349, 356 (1996) ("Without jurisdiction to enforce a judgment entered by a federal court, the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution.") (internal citation omitted).

(despite the fact that he knew of the hearing and was aware of the evidence against him[3]).  He was, however, represented by his attorney during the hearing.

ClearOne seeks the following relief: (1) findings of contempt against Donald Bowers regarding actions detailed in the court's November 19, 2009 Contempt Order; (2) findings of contempt against Donald Bowers regarding diversion of WideBand Massachusetts' assets into WideBand Georgia; (3) addition of Donald Bowers to the Permanent Injunction; (4) injunction barring Donald Bowers from working in the audio conferencing industry;[4] (5) award of attorneys' fees and costs to ClearOne; (6) damages to ClearOne based on the money diverted from WideBand Massachusetts; and (7) issuance of a warrant for arrest of Donald Bowers to coerce compliance with the court's orders.[5]  (Pl.'s Apr. 28, 2010 Brief (Docket No. 2165) at 6-7.)

Having heard arguments of counsel and considering the relevant pleadings and history of this case, the court finds Donald Bowers in contempt of court for his acts violating the court's prohibition on possession, disclosure, use, marketing, or selling products containing ClearOne's stolen trade secret and the court's prohibition on diversion of Defendant WideBand Massachusetts' assets.  The court also finds that Mr. Bowers has committed fraud on the court by

---

[3]See, e.g., Tr. of May 27, 2010 Contempt Hr'g (Docket No. 2213) at 8; May 24, 2010 Aff. of Donald Bowers (Docket No. 2200) ¶ 98.

[4]ClearOne also seeks an industry ban against Defendants Andrew Chiang and Jun Yang. But because they are not the subjects of the Order to Show Cause currently before the court, the court declines to issue such an order against them.

[5]Additionally, during the May 27, 2010 hearing, ClearOne requested an order barring Donald Bowers and any WideBand Defendant from filing *pro se* lawsuits or *pro se* pleadings in this case against ClearOne, its principals, or its witnesses.  (See Tr. of May 27, 2010 Hr'g at 18.) The court denied that request but did order that if any defendant or interested party files a *pro se* pleading in the current case, ClearOne need not respond unless directed by the court to do so. (Id. at 20, 25, 32.)

making false statements to the court and withholding material information from the court in a manner obstructing the court's ability to enforce its orders and final judgment against the WideBand Defendants.[6]

## I. FINDINGS OF FACT

### Introduction

This trade secret misappropriation case concerns the theft of Plaintiff ClearOne Communications, Inc.'s teleconferencing digital signal processing software (the "Honeybee Code").[7]  Over the past two years—i.e., after the trial, the jury verdict for ClearOne, and the court's issuance of final judgment and a permanent injunction—the court has held several contempt proceedings against certain of the WideBand Defendants and interested parties, including Donald Bowers (father of Defendant Lonny Bowers), who continue to possess and use the stolen Honeybee Code while steadfastly attempting to hide their repeated violations of the court's pre- and post-trial orders.

This particular contempt order arises out of a series of actions by third-party Donald Bowers, who has violated numerous court orders but until now has avoided consequences for his actions, in part because he has been protected from court action by his Chapter 7 bankruptcy

---

[6]The WideBand Defendants are, collectively, Lonny Bowers, Jun Yang, Andrew Chiang, WideBand Solutions, Inc. (a Massachusetts corporation), and Versatile DSP, Inc.

[7]The Honeybee Code was designed to enhance sound quality in audio conferencing equipment.  It contains audio digital signal processing (DSP) algorithms and computer code. (See Oct. 20, 2008 Trial Tr. at 111-12 (programmers have developed audio DSP algorithms to enhance sound quality in audio conferencing); see also Trial Ex. 571.)  For a more detailed explanation, see the court's November 19, 2009 Memorandum Decision and Order of Contempt (Docket No. 2009) at pages 6-7.

proceeding.[8]  The automatic stay, however, has since been lifted,[9] and the court has authority to bring Donald Bowers into the fold to answer for similar, if not the same, acts and behavior for which the court has already held that his co-conspirators are in contempt.

This order arises out of an April 7, 2010 Order to Show Cause and a May 27, 2010 contempt hearing specifically directed at Donald Bowers, but it is in essence a continuation of earlier contempt proceedings against Mr. Bowers' cohorts, the WideBand Defendants and Donald Bowers' companies WideBand Georgia and DialHD, Inc.  Accordingly, the court extends its November 19, 2009 Order of Contempt (issued against other parties) to Donald Bowers for surreptitiously re-packaging and selling products containing the stolen trade secret.

Also, based on new evidence, the court finds that Donald Bowers is in contempt for violating the court's order prohibiting transfer of WideBand Massachusetts' assets.  Specifically, he participated in the diversion of WideBand Massachusetts' assets in an attempt to avoid the WideBand Defendants' obligation to pay a multi-million dollar judgment to ClearOne.

Along the way, Donald Bowers has committed fraud on the court.  This order addresses

---

[8]Before Mr. Bowers filed for bankruptcy, the court found him in contempt for the separate, but related, post-verdict act of filing a UCC financing statement encumbering WideBand Massachusetts' assets.  (See Sept. 3, 2009 Mem. Decision & Order of Contempt (Docket No. 1902).)  In its order of contempt, the court required Donald Bowers to take actions to assure the court that no encumbrances on WideBand Massachusetts's assets existed and to pay ClearOne's attorneys' fees and costs.  Instead of paying the fees and costs, Donald Bowers filed a personal bankruptcy petition in Georgia on September 17, 2009, the same day that ClearOne submitted its application for fees and costs awarded by the court for Donald Bowers's contempt.  See In re Donald D. Bowers, Case No. 1:09-BK-12301 (United States Bankruptcy Court for the Southern District of Georgia).  The automatic stay barred ClearOne from collecting on the contempt judgment for fees and costs and prevented the court's consideration of ClearOne's subsequent allegations that Donald Bowers was committing other contemptuous acts.

[9]See Docket No. 2048.

all three sets of contumacious acts.

**Pre-Trial Orders Prohibiting Transfer of WideBand Massachusetts Assets**

Because the court had issued a preliminary injunction in October 2007 (finding that ClearOne established the likelihood of success on its claim that WideBand Massachusetts was selling ClearOne's protected trade secret, the Honeybee Code (aka "the Disputed Code"))[10], and based on evidence that WideBand Massachusetts assets (at that point considered possible assets to satisfy a judgment) were slated to be sold to Donald Bowers' company WideBand Georgia[11], the court issued a series of pre-trial and pre-judgment asset preservation orders to stop the sale.

In particular, in 2008 the court expressly ordered that money from the sale of WideBand Massachusetts' products was not to go to WideBand Georgia. (See June 26, 2008 Order (Docket No. 908) [hereinafter "Asset Preservation Order"].) At an injunction hearing on June 20, 2008 (which led to issuance of the Asset Preservation Order), the Court made it clear to the WideBand Defendants and to Randolph Frails (who appeared by telephone on behalf of Donald Bowers) that the Court did not want any money going to WideBand Georgia from the sale of the infringing products of WideBand Massachusetts:

> I'm going to freeze things right now as – and if I have to do it only from the side of the WideBand Massachusetts side, but I don't want the sale going on getting more wound up until I can fully hear on whether what was sold could legitimately be sold. That's the thing. I want to just stop everything in its tracks. I don't want money going back and forth, because if in fact ClearOne prevails and shows that these products are derived from code that belonged to it, then WideBand Georgia has got the money, but . . . the judgment would probably be against WideBand Massachusetts. . . . So money needs to stop. I don't want WideBand Massachusetts sending any money out. They might need to make ClearOne

---

[10]See Docket No. 572, also known as the Harman Preliminary Injunction.

[11]The full name of the company is WideBand Solutions, Inc., a Georgia company.

whole.  They might not.  I haven't had time and I won't for sometime to decide that.  Things must stop.  That's just what I'm saying. . . . [WideBand Massachusetts] can go on as it was just like before June 16th, whatever payments, whatever arrangements.  I just don't want money going to WideBand Georgia that ultimately – that might be from the sale of products [containing the trade secret].

(June 20, 2008 Hr'g Tr. at 26 (Docket No. 925-2) (emphasis added).)

Following the hearing, the court issued an order on June 26, 2008, prohibiting the transfer or sale of the assets of WideBand Massachusetts to WideBand Georgia and specifically stating, among other things, that "[n]one of WideBand Defendants' profits from the Disputed Code shall be transferred or conveyed to WideBand Georgia."  (Asset Preservation Order at p. 3 ¶ 4.)

**Trial and Jury Verdict**

On November 5, 2008, after a two-week trial, the jury issued its special verdict finding that all of the Defendants had wilfully and maliciously misappropriated ClearOne's Honeybee Code trade secret.  (See Docket No. 1286.)  The jury awarded ClearOne more than ten million dollars in compensatory and punitive damages.  (Id.)

**Post-Trial February 4, 2009 Preliminary Injunction**

On February 4, 2009, to protect the jury's verdict while briefing and argument continued on post-trial damage issues, the court expanded its 2007 preliminary injunction (i.e., the Harman Preliminary Injunction) to preliminarily enjoin use of the following products containing the Honeybee Code:

(a)     the AEC2W code licensed to Biamp Systems Corporation;

(b)     the computer code licensed to Harman Music Group, Inc. that was the subject of the October 30, 2007 Preliminary Injunction Order;

(c)     WideBand's FC101 product;

(d)     WideBand's WC301 product;

(e)     WideBand's WC301A product; and

(f)     <u>WideBand's Simphonix, including Si-40, and Si-400.</u>

(Feb. 4, 2009 Order Expanding Prelim. Inj. (Docket No. 1428) (emphasis added).)  The products

listed above were collectively referred to as the "Infringing Products" because evidence at trial

showed that the products contained the stolen Honeybee Code.  Specifically, the court ordered

the following:

> 1.     That Defendants Andrew Chiang, Jun Yang, Lonny Bowers, WideBand Solutions, Inc. ("WideBand"), and Versatile DSP, Inc. (collectively, the "WideBand Defendants"); <u>as well as WideBand Defendants' agents, servants, officers, employees, entities, and those acting under their direction or control,</u> are hereby enjoined, until such time as a permanent injunction is entered which supersedes and replaces this order, <u>from disclosing or using in any way</u> the following: (a) <u>the Honeybee Code</u> (including its unique algorithms or sub-algorithms that are not in the public domain), whether in the form of source code, object code, or any other form; (b) the product development documentation for the Honeybee Code or any other documentation that reveals the contents of the Honeybee Code; and (c) <u>the Infringing Products</u> (listed above).

> 2.     <u>These restrictions include, without limitations, a restriction upon any further marketing, selling, manufacturing, development, modification, duplication, or transport or delivery of technology containing the Honeybee Code.</u> These restrictions also include, without limitation, a restriction upon any further marketing, selling, delivery, and/or use of technology or products containing the Honeybee Code to service any past or existing customers.

(<u>Id.</u> at 5-6 (emphasis added).)

**Final Judgment and Permanent Injunction**

On April 8, 2009, the court issued its Final Judgment and Permanent Injunction.  (<u>See</u>

Apr. 8, 2009 Order Granting Permanent Inj. (Docket No. 1524); April 2009 Permanent Inj.

(Docket No. 1525).)  The April 2009 Permanent Injunction expressly restricts any continued use

of the intellectual property that was the subject of the trial, including WideBand's Simphonix

Product, by the WideBand Defendants and those acting in concert with them.

**Post-Judgment Contempt Proceedings**

In July 2009, ClearOne filed another motion for order to show cause, in which it alleged

that the WideBand Defendants continued to violate the Permanent Injunction by selling products

containing the Honeybee Code through a company named DialHD, Inc. under product names

"AEC4" and the "Mix-4" (or "Automixer").

The court issued an order to show cause[12] ("July 2009 OSC") to, among others, Donald

Bowers and his company, DialHD, Inc., requiring them show good cause why they should not be

held in contempt for violating certain court orders, including the April 2009 Permanent

Injunction.  (See July 17, 2009 Order (Docket No. 1750) at 1-2.)

The July 2009 OSC also required the subject parties to make a full written disclosure to

ClearOne before the hearing regarding their knowledge of the condition of the business of

WideBand Massachusetts and DialHD, including information about DialHD products.  (Id. at 4-

5.)

The court held an evidentiary hearing on July 31, 2009, to investigate the alleged

contemptuous actions of marketing and selling the AEC4 and Mix-4 products by DialHD.[13]  (See

---

[12]The OSC focused not only on the court's Permanent Injunction but also on the February 4, 2009 Preservation Order (Docket No. 1475) and two separate orders directing the WideBand Defendants, and those acting in concert, to ensure that WideBand Massachusetts's assets were preserved (the "No Asset Transfer Orders"). (See, e.g., Asset Preservation Order;  March 17, 2009 Order (Docket No. 1498).)

[13]Despite cautionary advice from the court, none of the Subject Parties was represented by counsel.  Subject Party Donald Bowers appeared on his own behalf, by telephone.

July 31, 2009 Transcript (Docket No. 1849) [hereinafter "July 2009 Tr."].)  At the evidentiary

hearing, Donald Bowers appeared by telephone, falsely claiming that the DialHD products were

merely "turnkey" products containing software from a Chinese company called Nanjing Haiyi

Software, LLC.[14]  (Id. at 147.)

DialHD, Inc. is a company registered to conduct business in the State of Georgia, and was

established on November 17, 2008 – just days after the jury returned its verdict.  (See DialHD

Cert. of Incorp. from State of Georgia, July 31 2009 Hr'g Ex. 37.)  Donald Bowers, the father of

WideBand Defendant Lonny Bowers, is the incorporator of DialHD.  (Id.)  Donald Bowers is the

only member of the Board of Directors.  He is also the Chief Executive Officer and Chief

Financial Officer for DialHD.  (Id.)  The DialHD address is the same as that registered to

WideBand Georgia,[15] Donald Bowers's other company.

According to Donald Bowers, he started DialHD as a company to work with his son,

Lonny Bowers, in the teleconferencing industry.  (See June 3, 2009 Hr'g Tr. (Docket No. 1672)

at 82-83.)  Although DialHD is incorporated in Georgia, it operates out of the same Connecticut

office space previously occupied by WideBand Massachusetts.  (See June 3, 2009 Tr. at 72-73

(Donald Bowers admits that DialHD is also using the address of 37 Northwest Drive, Plainville,

---

[14]Evidence was contrary to Donald Bowers' representation.  The DialHD AEC4 product
depends upon, indeed uses, WideBand technology, which in turn uses the Honeybee Code.  The
same is true of the HD4551.  Moreover, evidence shows that the Chinese company from which
DialHD claims to license its audio DSP software is a sham.  (See Nov. 19, 2009 Mem. Decision
& Order of Contempt (Docket No. 2009) (setting forth evidence).)

[15]As noted earlier, WideBand Georgia was the subject of the Court's June 26, 2008 TRO
barring transfer of certain intellectual property assets through any asset disposition agreement,
especially the one between WideBand Georgia and WideBand Massachusetts.  (See Docket No.
908.)

Connecticut, "because WideBand [Massachusetts] vacated that location"); July 31, 2009 Hr'g

Ex. 33 at 31 (DialHD manual, identifying same Connecticut business address as WideBand).)

At the end of the July 31, 2009 hearing, the court took the contempt matter under

advisement but issued a temporary restraining order and admonition from the bench:

> I BELIEVE, AND I AM CONFIDENT, THAT THE INFORMATION AND
> EVIDENCE THAT I HAVE HEARD TODAY SHOWS THAT THERE IS A
> SUBSTANTIAL LIKELIHOOD THAT CLEARONE WOULD PREVAIL ON
> THE QUESTION OF WHETHER THE PRODUCTS THAT ARE AT ISSUE
> HERE ARE IN FACT EMPLOYING THE HONEYBEE CODE. THAT
> BURDEN HAS BEEN MET. AND GIVEN THE EVIDENCE THAT I HAVE
> BEFORE ME, CLEARLY THE IRREPARABLE HARM THAT CLEARONE
> WOULD SUFFER IF THE ASSETS WERE TRANSFERRED. AGAIN, THIS
> T.R.O. MUST ISSUE. NOW, IT'S NARROWLY TAILORED TO THE ONLY
> TWO PRODUCTS. . . . HOWEVER, GENTLEMEN, I TELL YOU THAT **IF I
> HAVE EVIDENCE THAT IN THE INTERIM *ANY* OF THESE
> PRODUCTS *ARE SOLD OR TRANSFERRED*, I WILL VIEW THAT AS
> CONTEMPT WORTHY OF CRIMINAL PROSECUTION**.

(July 31, 2009 Hr'g Tr. at 174-75 (emphases added).)

On August 5, 2009, the court formalized its oral ruling by entry of a written Temporary

Restraining Order and Order from July 31, 2009 Hearing (the "August TRO"). (See generally

August TRO (Docket No. 1819).) Among other things, the August TRO repeated the court's

finding that ClearOne had shown a substantial likelihood of success on the merits, as follows:

> 7.      ClearOne has shown a substantial likelihood of success on the
> merits on its TRO request with regard to the sale and/or marketing of the **DialHD
> products sometimes identified as the "AEC4" and the "Mix-4" or
> "Automixer," including not only the physical products but also all firmware,
> software, accessories, installation materials, and support materials (the
> "DialHD Infringing Products")**, including as reflected in Exhibit Nos. 10, 11,
> and 12, marked at the July 31, 2009 hearing. More specifically, ClearOne has
> demonstrated a substantial likelihood of success on the merits of its claim that the
> **DialHD Infringing Products illegally utilize the Honeybee Code in the same
> or similar fashion to those "Infringing Products" identified in the Court's
> Order Granting Permanent Injunction.** [See Docket No. 1524 at 12 (defining

"Infringing Products" that "illegally utilize the Honeybee Code").]
(August TRO ¶ 7 (emphases added).)  The August TRO also expressly prohibited any further
marketing or sale of the "DialHD Infringing Products," including the AEC4. (Id.)

In October, while the July contempt matter remained pending, ClearOne filed another
motion for an order to show cause, in which ClearOne presented further evidence that the
Permanent Injunction and the August 2009 TRO had been violated by the some of the same
subject parties.

In that motion, ClearOne alleged that the WideBand Defendants and third parties
continue to sell products containing the Honeybee Code through DialHD under yet another
product name:  the DialHD HD4551 Product (a repackaged AEC4 or Simphonix product).

The court issued its October 2009 OSC to the same parties as those named in the July
2009 OSC, with the exception of Donald Bowers, as an individual (who was excepted because of
the automatic stay in his recent personal bankruptcy action[16]).  The October 2009 OSC also
required disclosure of certain information to ClearOne concerning the latest allegations of
contempt and fraud on the court.  Then the court held an evidentiary hearing on November 9,
2009.  (See Nov. 9, 2009 Hr'g Tr. (Docket No. 1999).)  During that hearing, further evidence
suggested that certain parties were selling a repackaged WideBand WC301 under the name
Longoo ACON1001.  (See id. at 37-38, 75-88.)

On November 19, 2009, the court issued another contempt order, in which the court
found that Lonny Bowers, Jun Yang, WideBand Solutions of Massachusetts, and third-party

---

[16]See In re Donald D. Bowers, Case No. 1:09-BK-12301 (Bankr. S.D. Ga.).

collaborator DialHD, Inc. were in contempt of court for violating the April 2009 Permanent Injunction and the August TRO "for selling WideBand's Simphonix Si-400 product in the guise of DialHD's AEC4 and HD4551 products, all of which contain the Honeybee Code." (Nov. 19, 2009 Mem. Decision & Order of Contempt (Docket No. 2009) [the "November 2009 Contempt Order"] at 2.)

Specifically, the court found that DialHD was created and used as a vehicle to repackage the WideBand Simphonix Si-400 product as the DialHD AEC4 and HD4551 products. The court also found that DialHD was established to carry on the enjoined business of WideBand Massachusetts. The court further found that DialHD is in possession and control of WideBand Massachusetts's technology, code, algorithms, and other assets. (See id.)

The November 2009 Contempt Order provides detailed procedural and factual background which the court will not repeat here. But because the matter now before the court is an extension of the matter heard in November 2009, the court hereby incorporates in this order the Findings of Fact and Conclusions of Law set forth in the November 2009 Contempt Order (Docket No. 2009).

On November 19, 2009, along with issuing the contempt order, the court amended the April 2009 Permanent Injunction by expanding the list of Infringing Products to include "DialHD, Inc.'s products sometimes identified as the 'AEC4,' the 'Mix-4' or 'Automixer,' and the HD4551; and the Longoo ACON1001." (Compare Apr. 8, 2009 Permanent Inj. (Docket No. 1525) p. 2 to Nov. 19, 2009 Am. Permanent Inj. (Docket No. 2010) p. 2.) The court also expanded the list of "those acting in concert" with the WideBand Defendants to include "DialHD, Inc. and Longoo in China, as represented by the website www.longoocn.com[.]"

(Compare April 2009 Permanent Inj. p. 3 to Am. Permanent Inj. p.3 (Docket No. 2010).)

The court found that DialHD's actions were initiated and guided by Donald Bowers. But the November 2009 Contempt Order and November Amended Permanent Injunction did not reach him individually because he was protected by the automatic stay in his bankruptcy matter. With the stay lifted, however, the situation has changed.

In addition to being the incorporator of DialHD, on the Board of Directors, the CEO, and the CFO, Donald Bowers, by his detailed testimony about DialHD and its business, illustrates his actual control over DialHD and knowledge about its business, including its website and its products: in other words, why he is responsible for the acts and actions of DialHD. (See Nov. 2009 Contempt Order at 26-27.)

The court finds that Donald Bowers is responsible for all acts leading the court to find, in November 2009, that "third-party collaborator DialHD, Inc. . . . [is] in contempt of court for violation of the court's April 2009 Permanent Injunction and August 2009 Temporary Restraining Order for selling WideBand's Simphonix Si-400 product in the guise of DialHD's AEC4 and HD4551 products, all of which contain the Honeybee Code." (November 2009 Contempt Order at 2.)

These acts include the "evidence, culminating in a July 31, 2009 hearing, that certain Defendants and a third-party named DialHD, Inc. (acting in concert with certain Defendants) were surreptitiously selling products utilizing the Honeybee Code, all in violation of the court's Permanent Injunction. Essentially, DialHD, along with Lonny Bowers and others, was selling products called the AEC4 that were simply a repackaged Simphonix product banned by the court's Permanent Injunction." (Id. at 4.)

Donald Bowers was part of the contempt by which "DialHD was created and used as a vehicle to repackage the WideBand Simphonix Si-400 product as the DialHD AEC4 and HD4551 products . . ., that DialHD was established to carry on the enjoined business of WideBand Massachusetts," and "that DialHD is in possession and control of WideBand Massachusetts's technology, code, algorithms, and other assets." (Id. at 24-25.)

**Donald Bowers' Misrepresentations to the Court**

Donald Bowers represented to this court that WideBand Georgia never had any involvement in WideBand Massachusetts.

At the order to show cause hearing on June 3, 2009, Donald Bowers stated as follows:

DONALD BOWERS: WIDEBAND GEORGIA INCORPORATED HAS NEVER HAD ANY INVOLVEMENT WHATSOEVER IN WIDEBAND MASSACHUSETTS, NOT TODAY, NOT LAST YEAR, NOT THE YEAR BEFORE. . . .

Q: -- HAS WIDEBAND GEORGIA OR YOU EXECUTED OR TAKEN POSSESSION OF ANY ASSETS FROM WIDEBAND SOLUTION INCORPORATED, A MASSACHUSETTS COMPANY?

DONALD BOWERS: NO. . . . NO ENTITY THAT I'M INVOLVED WITH, WHICH INCLUDES WIDEBAND SOLUTIONS, INC. OF GEORGIA, HAVE ANY CLAIM, HAVE EVER HAD ANY CLAIM, HAVE EVER HAD ANYTHING TO DO WITH WIDEBAND MASSACHUSETTS.

(June 3, 2009 Hr'g Tr. at 68-69, 71.)

Donald Bowers did not disclose that WideBand Georgia was a "Distributor" for WideBand Massachusetts, even when the court ordered him to do so. On October 29, 2009, the court ordered Donald Bowers to "provide full and complete written answers, under oath or affirmation on penalty of perjury," to the following request:

The specific identity of each of the persons or entities that purchased or took possession of any of the Infringing Products [including WideBand Massachusetts'

> FC101, WC301, WC301A, and Simphonix products] after the date of the sale agreement between WideBand Massachusetts and WideBand Georgia, of June 17, 2008. This includes the name of the purchasing or receiving person or company, the name of the contact person(s), the address, the telephone and facsimile numbers, any e-mail contact information, and the date of the sale, number and description of the units sold/purchased, and the price.

(Order Granting Motion to Conduct Discovery and for Disclosures (the "Discovery Order") at 4, ¶ 10a (Docket No. 1971).)

The Court repeated its warning that the answers provided would be subject to penalties for perjury, and other sanctions, multiple times in the Discovery Order, making it very clear to Donald Bowers (and the other parties subject to the order) to take the disclosure obligations very seriously, and not to omit any relevant information:

> The Subject Parties are advised that the Answers are subject to penalties for perjury. . . . Failure of any of the Subject Parties to comply fully and completely with this Order Enforcing Disclosure Order may result in the imposition of curative and punitive sanctions including without limitation issuance of arrest warrants and the imposition of monetary sanctions and incarceration until such time as this Order is complied with and/or the Subject Parties have demonstrated to this Court the inability to comply with this Order.

(Discovery Order at 3, 13.)

Despite the court's warning, on November 6, 2009, Donald Bowers provided the following response:

> The subject parties are compiling the information that is in their possession. The primary distributors who sold the majority of the product to the channel were KBZ and Visitect Marketing. None of the requested said information is in computer format pursuant to the court's order. The bulk of such information is available from Mark Morris of Snell and Wilmer who has possession of WideBand, MA. Hard Drives. . . .

(Subject Parties' Responses to the Discovery Order (Mistitled in the Caption by the Subject Parties' as "Defendants' and Interested Parties' Motion Requesting Permission to File Sur-Reply

Brief") ("Discovery Responses") at 3.)

Donald Bowers did not disclose that WideBand Georgia received or took possession of any of the Infringing Products, nor that WideBand Georgia was a distributor of WideBand Massachusetts, despite the fact that such information would be clearly within his personal knowledge as the CEO and CFO of WideBand Georgia. In his Discovery Responses, Donald Bowers also represented that, "Neither Dial HD or WideBand-GA, or Donald Bowers ever took possession of any WideBand-MA assets . . . ." (Discovery Responses at 3.)

But on November 9, 2009, Lonny Bowers testified, and disclosed for the first time, that WideBand Georgia (controlled by Donald Bowers) was a "Distributor" for WideBand Massachusetts.

> Q: SO WHAT WAS WIDEBAND GEORGIA DOING BEFORE THE [FEBRUARY 4, 2009 EXPANDED PRELIMINARY] INJUNCTION THEN?
>
> A: I WOULD CLASSIFY THEM AS A DISTRIBUTOR.
>
> Q: OF WHAT PRODUCTS?
>
> A: OF THE WIDEBAND. THEY SOLD THE WIDEBAND – THE PRODUCTS THAT WIDEBAND [MASSACHUSETTS] SOLD.
>
> Q: AND WHEN THEY SOLD THE WIDEBAND PRODUCTS, DID THEY GET PAID FOR THOSE PRODUCTS?
>
> A: DID PEOPLE PAY THEM?
>
> Q: YEAH.
>
> A: I HOPE SO. . . .
>
> Q: SO WHEN THEY SOLD PRODUCTS, WHAT HAPPENED TO THE MONEY, THE WIDEBAND PRODUCTS? WHERE DID THE MONEY GO?

A:      WELL, YOU HAVE THE ACCOUNTS.

Q:      IT WENT INTO THE WIDEBAND GEORGIA ACCOUNTS, DIDN'T
        IT? . . .

A:       . . . YES. . . . OKAY. WE HAD DISTRIBUTORS, OKAY? WE HAD
        THREE MAIN DISTRIBUTORS. . . . AND AFTER MARCH OR APRIL
        OF 2008 WE DIDN'T HAVE THE ABILITY TO PURCHASE
        PRODUCT. SO THEY SUPPORTED – WIDEBAND GEORGIA
        SUPPORTED WIDEBAND MASSACHUSETTS, SUPPORTED OUR
        GROUP, AND OUR GROUP SUPPORTED ALL THE DISTRIBUTORS
        . . . .

Q:      PRODUCTS WERE SOLD, THE CHECKS WENT TO WIDEBAND
        GEORGIA; IS THAT RIGHT?

A:      WIDEBAND GEORGIA, K.B.Z., ALL OF THE OTHER
        DISTRIBUTORS SOLD PRODUCT, AND THEY RECEIVED CHECKS
        FROM THEIR CUSTOMERS, YES, AND WE SUPPORTED THAT.
        AND WIDEBAND GEORGIA – . . .

A:      -- PAID US MONEY.

(Nov. 9, 2009 Hr'g Tr. at 47-48, 55-56.)  Lonny Bowers further testified that WideBand Georgia

had no sales team, and that the products were being sold through (by) WideBand Massachusetts:

Q:      WHO WAS THE SALESPERSON FOR WIDEBAND GEORGIA? . . .

A:      THEY WERE USING US TO SELL. . . .

THE COURT: US BEING WIDEBAND MASSACHUSETTS?

A:      WIDEBAND MASSACHUSETTS . . .

Q:      OKAY. BUT AS I UNDERSTAND IT THEN, WIDEBAND GEORGIA
        THROUGH THIS RELATIONSHIP WITH WIDEBAND MASSACHUSETTS,
        SAME NAME, WIDEBAND, SELLING THE SAME PRODUCTS,
        WIDEBAND MASSACHUSETTS PRODUCT, USING THE SAME SALES
        TEAM. DO I HAVE THAT RIGHT?

A:      ALMOST.

Q:    ALMOST. WHAT'S THE DIFFERENCE?

A:    WELL, WIDEBAND GEORGIA DIDN'T HAVE A SALES TEAM.

(Id. at 48, 58.)

Lonny Bowers testified that he would expect that WideBand Georgia sold at least

$303,000 in WideBand Massachusetts' products after the Court's order prohibiting the transfer

of WideBand's assets or profits on June 26, 2008, and before the trial:

Q:    WOULD IT SURPRISE YOU IF I TOLD YOU THAT ADDING UP THESE
      NUMBERS BETWEEN THE DATE OF THE COURT'S T.R.O. ORDER, JUNE
      2008, AND THE DATE OF TRIAL, WOULD YOU BE SHOCKED OR
      SURPRISED THAT THE [] NUMBERS . . . ADD UP TO ABOUT $303,000?

A:    WELL, THAT'S NOT VERY MUCH, BUT I WOULD HOPE THAT THEY
      WOULD SELL AT LEAST THAT MUCH IN PRODUCTS THAT THEY
      PURCHASED AND RESOLD.

(Id. at 53-54.)

Lonny Bowers further testified that Donald Bowers and WideBand Georgia continued to

sell Infringing Products even after the Jury's verdict.

Q:    YOU WERE THE PRESIDENT OF WIDEBAND [MASSACHUSETTS] AND
      YOU WERE ALSO . . . THE SALES GUY?

A:    MY TEAM. ACTUALLY I WASN'T REALLY FUNCTIONING MUCH AS A
      SALES GUY AT THE TIME. I WAS INVOLVED IN THIS, BUT IT WAS MY
      TEAM, YES.

Q:    SO AFTER THE VERDICT, WHAT DID YOUR TEAM SELL?

. . .

A:    YEAH. UP UNTIL THERE WAS AN INJUNCTION ON THE PRODUCTS, WE
      SOLD THE SI-400, THE WC301A, THE 301, AND THE FC101.

Q:    YOU THINK YOU SOLD THOSE UP UNTIL THE EXPANDED
      PRELIMINARY INJUNCTION?

A:   WE SOLD THE PRODUCTS – CONSULTING WITH OUR ATTORNEYS, WE SOLD THE PRODUCTS UP UNTIL THERE WAS AN INJUNCTION.  WHEN THERE WAS AN INJUNCTION, WE STOPPED SELLING PRODUCTS.

(Nov. 19, 2009 Hr'g Tr. at 56-57.)

**Asset Transfers**

The recently produced bank records of WideBand Georgia show that WideBand Massachusetts was conducting its business through Donald Bowers/WideBand Georgia after the failed June 17, 2008 Sale Agreement, and was selling Infringing Products after the Jury's verdict. In response to the court's Discovery Order, Donald Bowers produced the statements for the WideBand Georgia bank account on November 6, 2009, which merely showed credits and debits to the account, and provided little to no detail regarding the transactions. (See Online Bank Statements of WideBand Georgia, attached as Exhibit "M" to Pl.'s Br. Supporting Request that the Court Hold Donald Bowers in Civil Contempt ("Pl.'s Supp. Br.") (Docket No. 2165).)

The bare information showed that WideBand Georgia, a corporation that ClearOne previously believed was not conducting any business since the Court enjoined it from taking possession of the assets of WideBand Massachusetts on June 26, 2008, had in fact received more than $1.36 million in its bank account from (mostly) undisclosed sources, from May 14, 2008 to September 30, 2009. (See id.)

After ClearOne's counsel followed up with Donald Bowers's counsel, Donald Bowers produced documents showing five outgoing wire transfers to WideBand Defendants' counsel and expert (in a total amount of approximately $200,00), and copies of the checks that were written on the WideBand Georgia bank account – but only from November 2008, i.e. after the Jury's verdict. (See WideBand Georgia Outgoing Wire Transfers, attached as Exhibit "O" to Pl.'s Supp.

19

Br.; WideBand Georgia Checks After the Verdict, attached as Exhibit "P" to Pl.'s Supp. Br.)

No documents showing where the $1.36 million in incoming wire transfers and deposits originated has ever been produced to ClearOne, demonstrating Donald Bowers' ongoing and continuing violations of the Court's Discovery Order.

But even the limited records show that WideBand Massachusetts did a significant amount of business through WideBand Georgia even after the Jury's November 5, 2008 verdict. The disclosed check records show that WideBand Georgia wrote $127,330 in checks to WideBand Massachusetts after November 5, 2008, and that WideBand Georgia spent at least $10,567.55 in shipping expenses during that same period – evidence that, in light of Lonny Bowers's November 9, 2009 testimony, supports the conclusion that Infringing Products were being sold after the Jury's verdict. (See WideBand Georgia Checks After the Verdict.) The check records also show that a significant amount of WideBand Georgia money was transferred to various WideBand Defendants, Donald Bowers, and Donald Bowers' other business entities.

In addition, WideBand Georgia made payments to cover Donald Bowers' personal expenses and purchases. For example, Donald Bowers' bankruptcy schedules, submitted to the Bankruptcy Court in the Southern District of Georgia on September 17, 2009, show that a 2008 Mercedes 500 Sedan, valued at $50,000, was purchased by WideBand Georgia for Donald Bowers. (See Bankruptcy Schedules at 15, excerpts attached as Exhibit "Q" to Pl.'s Supp. Br.) Also, bank statements show that money was transferred out of the WideBand Georgia bank account, and into the other business accounts of Donald Bowers and Donald Bowers' personal checking account: $37,150 to Signature Mortgage (Donald Bowers' mortgage business); $21,500 to Signature Properties (another Donald Bowers' entity); $58,000 to Donald Bowers' personal

account; and $4,600 to DialHD's account.  (See Online Bank Statements of WideBand Georgia.)

Finally, contrary to Donald Bowers' testimony that WideBand Georgia was not involved with

WideBand Massachusetts in any way, the check records show that WideBand Georgia was

paying the utilities and rent for the two offices of WideBand Massachusetts in Reading,

Massachusetts, and Plainville, Connecticut; paying the health insurance for employees of

WideBand Massachusetts; and making other payments for WideBand Massachusetts. (See

WideBand Georgia Checks After the Verdict, Ex. P.)

The court emphasized in multiple orders, and in numerous hearings, its function of

protecting the Jury's verdict by taking action to ensure that a judgment is collectable, if possible.

Indeed, on June 3, 2009, the court specifically stated to Donald Bowers on June 3, 2009:

> THE PURPOSE OF A CIVIL CONTEMPT PROCEEDING IS TO MAKE
> THOSE AFFECTED BY IT – AND THAT INCLUDES YOU, MR. DONALD
> BOWERS – TO MAKE THOSE AFFECTED BY IT OBEY THE COURT'S
> ORDER. AND ANY PUNISHMENT OR PENALTY IS TO ENFORCE THAT
> ORDER AND TO CURE THOSE IN CONTEMPT OF THEIR CONTEMPT. ...
> THE REASON FOR THIS ACTION NOT ONLY IS TO MAKE SURE PEOPLE
> ARE IN COMPLIANCE WITH MY ORDER, BUT TO MAKE SURE THAT
> THE JURY'S VERDICT IS ABLE TO BE WORTH SOMETHING. IN OTHER
> WORDS, IF IN FACT CLEARONE IS ALLOWED TO COLLECT ITS
> JUDGMENT THAT THERE IS SOMETHING TO COLLECT ON. THAT IS
> MY FUNCTION . . . .

(June 3, 2009 Hr'g Tr. at 86-87.)

Donald Bowers, in his position as CEO and CFO of WideBand Georgia, cannot plausibly

deny that he had knowledge that WideBand Georgia was acting as a purported "distributor" for

WideBand Massachusetts or that such information was not material to these discussions.

Moreover, Donald Bowers, through WideBand Georgia, transferred at least $154,454 to the

WideBand Defendants and other insiders during the same time period that the WideBand

Defendants were refusing to pay their trial counsel.

The DialHD account statements show that, after the court issued the Permanent Injunction, Donald Bowers shifted the illegal activity being conducted under the guise of WideBand Georgia to DialHD. (See May 8, 2009 to Nov. 3, 2009 Online Bank Statements of DialHD, attached as Exhibit "S" to Pl.'s Supp. Br.) DialHD bank statements show that money was transferred out of the DialHD bank account, and into the other business accounts of Donald Bowers and Donald Bowers' personal checking account.[17] And after ClearOne sought more detail, Donald Bowers produced copies of the checks that were written on the DialHD bank account.[18] (See DialHD Checks, attached as Exhibit "T" to Pl.'s Supp. Br.)

Check records show that DialHD continued to pay the utilities, rent, and other business expenses of WideBand Massachusetts after these expenses were no longer paid out of the WideBand Georgia account, showing a continuous effort to misappropriate ClearOne's trade secrets using the same technology and actors, but running the money through different entities: first, through WideBand Massachusetts; then through WideBand Georgia; and finally, through DialHD. (See DialHD Checks, Ex. T to Pl.'s Supp. Br.)

Notably, Donald Bowers did not supplement his response to the court's Discovery Order.

---

[17]For example, DialHD transferred $4,150 to Signature Mortgage (Donald Bowers' mortgage business); $6,000 to Signature Properties (another Donald Bowers' entity); $11,300 to Donald Bowers' personal account; and $3,900 to the WideBand Georgia account. (See Online Bank Statements of DialHD, Ex. S to Pl.'s Supp. Br.)

[18]The check records show that the following checks were drawn on the DialHD account: $17,004 to Kelly Anton (WideBand's bookkeeper); $9,825 to Lonny Bowers; $200 to Lea Bowers; $18,360 to Randolph Frails; $2,600 to Donald Bowers; $10,683.46 to David Sullivan; and $340 to St. Teresa (the private school attend by Donald Bowers' sons). (See DialHD Checks, Ex. T.)

When Donald Bowers filed his response to the Court's Discovery Order on November 6, 2009, he stated that it was incomplete, and that it "[would] be immediately supplemented." (Discovery Responses at 2 (emphasis added), Ex. B to Pl.'s Supp. Br.)  On November 18, 2009, ClearOne's counsel sought supplementation of the disclosures of Donald Bowers.  (See 12-18-09 E-mail J. Parrish to R. Frails, attached as Exhibit "U" to Pl.'s Supp. Br.)  But Donald Bowers never supplemented his Responses to the Discovery Order.

Donald Bowers personally profited from income to WideBand Georgia and Dial HD. These were closely held companies.  The timing of their incorporation and activities, as well as overlapping founders and principals, when matched against activities, pleadings, and orders in this case, is not coincidental.

## II. CONCLUSIONS OF LAW

On February 11, 2010, after the automatic stay was lifted in Donald Bowers's personal Chapter 7 bankruptcy matter, Plaintiff ClearOne Communications, Inc. filed its *Ex Parte* Motion for Addition of Donald Bowers to Contempt Order and Amended Permanent Injunction (Docket No. 2117).)  In that motion, ClearOne contends that Donald Bowers should be held in contempt for (1) engaging in acts set forth in the November 19, 2009 Contempt Order; (2) diverting approximately $1.3 million of WideBand Massachusetts' assets through his company WideBand Georgia; and (3) committing fraud on the court by false testimony, false statements, and material nondisclosures.  (See Pl.'s Brief. Supp. Request for Contempt Order (Docket No. 2165) at 2-3.)

On April 7, 2010, based on ClearOne's motion, the court issued an Order to Show Cause to Donald Bowers requiring him to show "why he should not be held in contempt for the court's orders in this case for the conduct described in Plaintiff ClearOne Communications, Inc.'s

Motion for Order to Show Cause for Violation of the Temporary Restraining Order and

Supplemental Evidence Regarding Additional Violations of the Permanent Injunction and Fraud

on the Court (Docket No. 1958)." (Docket No. 2146 at 2, ¶ 5.)

On May 27, 2010, the court held a contempt hearing and took the matter under

advisement.

Now, having considered argument presented at the May 2010 hearing,[19] along with

evidence presented at the June and October 2009 contempt hearings, the court holds, for the

reasons set forth below, that ClearOne has shown by clear and convincing evidence that Donald

Bowers is in contempt of court for (1) violating the court's April 2009 Permanent Injunction and

November 2009 Amended Permanent Injunction by working with the WideBand Defendants and

DialHD to repackage (i.e., disguise), market and sell WideBand Massachusetts' infringing

products (i.e., products containing ClearOne's misappropriated trade secret, the Honeybee Code);

(2) violating the court's August 5, 2009 Temporary Restraining Order ("August TRO") for

selling WideBand's Simphonix Si-400 infringing product in the guise of DialHD's AEC4 and

---

[19]Although the court was prepared to take evidence during the May 2009 hearing, the court had no need to do so because Donald Bowers chose not to present a proper defense to the contempt charges (i.e., he repeated legal arguments previously rejected by the court but he did not dispute the facts with admissible evidence that was subject to cross-examination). The court also notes that it did not consider the May 24, 2010 Affidavit and Statement of Facts of Donald Bowers (Docket No. 2200) or the May 26, 2010 Supplemental Affidavit of Donald Bowers (Docket No. 2202) because (1) he filed the untimely affidavits *pro se* even though he was represented by counsel of record; (2) much of the affidavits' content was not admissible because it was either legal argument or statements lacking foundation or evidence that Mr. Bowers had personal knowledge; and (3) Mr. Bowers did not appear at the hearing, much less make himself available for cross-examination. (See Apr. 7, 2010 Order to Show Cause ¶¶ 3, 7 (noting that affidavits were due no later than May 14, 2010, and that "any witness offering direct evidence through an affidavit must appear in person at the hearing to be cross-examined, otherwise the court will not consider the affidavit(s) as evidence.").)

HD4551 products, all of which contain the Honeybee Code[20]; (3) violating the June 26, 2008

Order ("Preservation of Assets Order") by diverting a significant amount of money from

WideBand Massachusetts to WideBand Georgia to hide WideBand Massachusetts' profits and

keep it insolvent in anticipation of a judgment; and (4) engaging in fraud on the court by making

multiple misrepresentations to the court and by withholding material information (that he was

required by order to disclose) that obstructed the court's ability to enforce pre-trial injunctions,

the jury verdict, final judgment, and post-trial injunctions.

**Contempt Standard**

Under federal law, the court has inherent power to coerce compliance with its orders,

sanction behavior constituting fraud on the court, and vindicate its authority in the face of

contumacious behavior.  See, e.g., Chambers v. NASCO, Inc., 501 U.S. 32, 43-44 (1991) ("It is

firmly established that the power to punish for contempt is inherent in all courts.  This power

reaches both conduct before the court and that beyond the court's confines, for the underlying

concern that gave rise to the contempt power was not merely the disruption of court proceedings.

Rather, it was disobedience to the orders of the Judiciary, regardless of whether such

disobedience interfered with the conduct of trial.") (internal citations, omissions, and quotation

marks omitted).  "[C]ontempt is considered civil if the sanction imposed is designed primarily to

coerce the contemnor into complying with the court's demands and criminal if its purpose is to

---

[20]The August 5, 2009 TRO was preceded by the court's admonition from the bench during the court's July 31, 2009 evidentiary hearing concerning a related contempt matter. Donald Bowers appeared *pro se* at that hearing by telephone.  At the end of the hearing, the court stated, from the bench, "Gentlemen, I tell you that if I have evidence that in the interim any of these products are sold or transferred, I will view that as contempt worthy of criminal prosecution." (July 31, 2009 Hr'g Tr. (Docket No. 1849) at 174-75.)

punish the contemnor, vindicate the court's authority, or deter future misconduct." United States v. Lippitt, 180 F.3d 873, 876-77 (7th Cir. 1999) (citing Hicks v. Feiock, 485 U.S. 624, 631-32 (1988)). See also United States v. Buck, 281 F.3d 1336, 1342 (10th Cir. 2002) (noting that fraud on the court "requires a showing that one has acted with an intent to deceive or defraud the court" through a "deliberate scheme").

To succeed on its motion for a finding of contempt, ClearOne must prove, by clear and convincing evidence, that (1) each order at issue was valid and enjoined conduct in reasonable detail (i.e., was sufficiently specific when defining the conduct enjoined); (2) the enjoined party had actual knowledge of the order through personal service or otherwise and was subject to it; and (3) the enjoined party disobeyed the order. See, e.g., Reliance Ins. Co., 159 F.3d at 1315-16; Fed. R. Civ. P. 65(d)(2) (defining persons bound by injunction and restraining order).

The standard applied to determine whether third parties are in contempt for violation of an order being enforced is essentially the same, but with the additional requirement that ClearOne demonstrate that Donald Bowers was in "active concert or participation" with the expressly enjoined parties. See Fed. R. Civ. P. 65(d)(2).

As for the compensatory damages ClearOne seeks (e.g., attorneys' fees and costs), ClearOne must prove such damages by the lesser standard of a preponderance of the evidence. Federal Trade Comm'n v. Kuykendall, 371 F.3d 745, 751 (10th Cir. 2004); Reliance Ins. Co., 159 F.3d at 1318.

In civil contempt proceedings, disobedience of the order need not be willful. Rather, "[a] district court is justified in adjudging a person to be in civil contempt for failure to be reasonably diligent and energetic in attempting to accomplish what was ordered." Bad Ass Coffee Co. of

Hawaii, Inc. v. Bad Ass Ltd. P'ship, 95 F. Supp. 2d 1252, 1256 (citing Goluba v. School Dist. of Ripon, 45 F.3d 1035, 1037 (7th Cir. 1995)).[21]  Nevertheless, Donald Bowers direct role in the continued sale of the Si-400/AEC4/HD4551 products, and other acts, even after the court's warning to him, leads the court to finds that his acts were intentional.

The court finds that ClearOne has established, by clear and convincing evidence, that Donald Bowers is in civil contempt for violating the court's Asset Preservation Order, Amended Permanent Injunction, August 5, 2009 TRO, and Discovery Order.  ClearOne has also established, by a preponderance of the evidence, that it has been harmed by such conduct.

## ClearOne Has Satisfied Its Burden.

### Valid and Sufficiently Detailed Orders Existed.

The primary orders at issue here are the June 26, 2008 Preservation of Assets Order, the April 2009 Permanent Injunction, the August 2009 TRO, the Amended Permanent Injunction, and the October 2009 Discovery Order.  All are valid orders.[22]

The court also holds that each order was sufficiently clear in defining what conduct was prohibited.  Here, there can be no genuine doubt about what the orders prohibited.  In addition to the clear language of the orders, the court held multiple hearings before issuing them.  In sum,

---

[21]A person facing an order to show cause "may assert a defense to civil contempt by showing by clear and convincing evidence that 'all reasonable steps' were taken in good faith to ensure compliance with the court order and that there was substantial compliance, or relatedly by proving 'plainly and unmistakenly' defendants were unable to comply with the court order." Id. n.8.  But nothing has been presented by the Contemnors that would enable them to rely on such a defense.

[22]Of course the Defendants take issue with the conclusions in the orders, that is not what the court means by "validity."  Nothing in the record supports a finding that the court did not have authority to issue the orders.

the first element of contempt, the existence of valid court orders, has been established.  (See also November 2009 Contempt Order (Docket No. 2009) at 3-5, 8-9, 9-16, 17-22, 60-61.)

**Donald Bowers Had Appropriate Notice of the Orders.**

An injunction is binding on those "'who receive actual notice of the order by personal service or otherwise.'"  Reliance Ins. Co. v. Mast Constr. Co., 159 F.3d 1311, 1317 (10th Cir. 1998) (quoting Fed. R. Civ. P. 65(d)).  The court holds that Donald Bowers received proper notice of the relevant orders, either through his or his attorney's attendance at hearings or through service of the papers during prosecution of the many contempt proceedings discussed above.

In short, Donald Bowers was abundantly aware of the relevant court orders, and in fact had the benefit of repeated, detailed warnings from the court.  (See also Nov. 2009 Contempt Order at 3-5, 8-9, 9-16, 17-22, 56-57, 61.)

**ClearOne Has Established Donald Bowers's Contumacious Behavior and Disobedience**

The court finds that ClearOne has presented clear and convincing evidence that Donald Bowers directly violated the Asset Preservation Order, the Amended Permanent Injunction, the August 5, 2009 TRO, and the Discovery Order.

Donald Bowers as incorporator of DialHD, a member of the Board of Directors, the Chief Executive Officer, and the Chief Financial Officer, is responsible for the acts and actions of DialHD.  Evidence shows that Donald Bowers was a participant in and is responsible for all acts establishing that "third-party collaborator Dial HD, Inc. . . .[is] in contempt of Court for violation of the court's April 2009 Permanent Injunction and August 2009 Temporary Restraining Order for selling WideBand's Simphonix Si-400 product in the guise of DialHD's AEC4 and HD4551

products, all of which contain the Honeybee Code." (Nov. 2009 Contempt Order at 2.) These acts include the "evidence, culminating in a July 31, 2009 hearing, that certain Defendants and a third-party named DialHD, Inc. (acting in concert with certain Defendants) were surreptitiously selling products utilizing the Honeybee Code, all in violation of the court's Permanent Injunction. Essentially, DialHD, along with Lonny Bowers and others, was selling products called the AEC4 that were simply a repackaged Simphonix product banned by the court's Permanent Injunction." (Id. at 4.)

Furthermore, Donald Bowers was part of the contempt by which "DialHD was created and used as a vehicle to repackage the WideBand Simphonix Si-400 product as the DialHD AEC4 and HD4551 products . . ., that DialHD was established to carry on the enjoined business of WideBand Massachusetts," and "that DialHD is in possession and control of WideBand Massachusetts's technology, code, algorithms, and other assets." (See id. at 24-25.) In addition, Donald Bowers has testified in detail about DialHD and its business, including as found by the Court in the November 19, 2009 Contempt Order, thus confirming his actual control over DialHD and knowledge about its business, including its website and its products. (See id. at 26-27.)

Yet Donald Bowers failed to provide information required by the disclosure requirements set forth in the July 2009 OSC:

> DialHD, through Donald Bowers, also violated the [July 2009] OSC's disclosure requirements. At a minimum, Donald Bowers was aware of the DialHD offices in Connecticut. As the CEO and CFO of DialHD, Donald Bowers cannot credibly claim no knowledge about the AEC4 and Mix-4/Automixer products, particularly after he represented to the court that those DialHD products were purchased as "turnkey" products from a company in China. (July 2009 Tr. at 165.) The court views his refusal to provide any information or documents under the

guise that the information was "confidential business information and should not be provided to our competitor," (see July 2009 Hr'g Ex. 56), as obstruction.

(November 2009 Contempt Order at 32.)

ClearOne has also established that DialHD – and thus Donald Bowers – was using the Honeybee Code and was continuing to sell the infringing products, in particular the AEC4, Mix 4, Mix 4+2, and HD4551, in violation of the Court's orders. (See id. at 33-47, 49-54.)

Donald Bowers' testimony claiming that the DialHD products were "turnkey" products purchased from a Company in China, was false, including his testimony "at the July 31, 2009 hearing that DialHD purchased the AEC4 product as a 'turnkey' products from a company in China," and that "the algorithm in DialHD's products [was] not be the same algorithm that was used in the WideBand Simphonix product because it was supposedly independently developed by" Haiyi.  (Id. at 47-48.)  Donald Bowers also made false representations to the court when, "[i]n [his] August 19, 2009 disclosure, he again assert[ed] that Haiyi was the source of DialHD's products," and claimed "that he [had] been working with Guoliang Qu ("Qu") from Haiyi for the past year to develop the DialHD products."  (Id. at 47-48.)  As the Court has already concluded, Donald Bowers' testimony, representations, and purported disclosures, were false. (See id. at 48-49.)

Donald Bowers violated the court's warnings, instructions, and orders by diverting a substantial amount of WideBand Massachusetts assets to WideBand Georgia and then DialHD. The Court made it clear to the contemnors that the court did not want any money going to WideBand Georgia from the sale of the infringing products of WideBand Massachusetts:

. . . So money needs to stop. I don't want WideBand Massachusetts sending any money out. . . . I just don't want money going to WideBand Georgia that

ultimately – that might be from the sale of products [containing the trade secret].

(June 20, 2008 Hr'g Tr. at 26 (Docket No. 925-2).)  Following the June 20, 2008 hearing, the

court issued its June 26, 2008 order prohibiting the transfer or sale of the assets of WideBand

Massachusetts to WideBand Georgia, including the requirement that "[n]one of WideBand

Defendants' profits from the Disputed Code shall be transferred or conveyed to WideBand

Georgia."  (Order at 3, ¶ 4 (Docket No. 908).)

Donald Bowers violated this order.  WideBand Georgia, a corporation that ClearOne

previously believed was not conducting any business since the Court enjoined it from taking

possession of the assets of WideBand Massachusetts on June 26, 2008, has in fact received more

than $1.36 million in its bank account from (mostly) undisclosed sources, from May 14, 2008 to

September 30, 2009.  (See Online Bank Statements of WideBand Georgia.)

More importantly, no documents showing where the $1.36 million in incoming wire

transfers and deposits originated has ever been produced to ClearOne, demonstrating Donald

Bowers' ongoing and continuing violations of the court's Discovery Order.

Among other things, the check records show that Donald Bowers wrote and signed, and

engaged in money transfers to insiders or to himself for his own personal use.

Finally, the check records show that WideBand Georgia was paying the utilities and rent

for the two offices of WideBand Massachusetts in Reading, Massachusetts and Plainville,

Connecticut; paying the health insurance for employees of WideBand Massachusetts; and making

other payments for WideBand Massachusetts. (See WideBand Georgia Checks After the

Verdict.)

Donald Bowers made material misrepresentations to the court when he claimed no

31

involvement between WideBand Massachusetts and WideBand Georgia. Donald Bowers also committed fraud on the court when, among other things, he testified at the order to show cause hearing on June 3, 2009, that "WIDEBAND GEORGIA INCORPORATED HAS NEVER HAD ANY INVOLVEMENT WHATSOEVER IN WIDEBAND MASSACHUSETTS, NOT TODAY, NOT LAST YEAR, NOT THE YEAR BEFORE. . . ." and that "NO ENTITY THAT I'M INVOLVED WITH, WHICH INCLUDES WIDEBAND SOLUTIONS, INC. OF GEORGIA, HAVE ANY CLAIM, HAVE EVER HAD ANY CLAIM, HAVE EVER HAD ANYTHING TO DO WITH WIDEBAND MASSACHUSETTS." (June 3, 2009 Hr'g Tr. at 68-69, 71.)

As noted above, this testimony was false – Donald Bowers had in fact been personally signing the checks from WideBand Georgia, including checks to pay the expenses of WideBand Massachusetts and his son, Lonny Bowers. Donald Bowers made repeated, false representations to the court regarding the sale of the Infringing Products.

Donald Bowers violated the Discovery Order by failing to disclose that WideBand Georgia was a "Distributor" for WideBand Massachusetts, even though the Court had ordered him to "provide full and complete written answers, under oath or affirmation on penalty of perjury," to the following request:

> The specific identity of each of the persons or entities that purchased or took possession of any of the Infringing Products [including WideBand Massachusetts' FC101, WC301, WC301A, and Simphonix products] after the date of the sale agreement between WideBand Massachusetts and WideBand Georgia, of June 17, 2008. This includes the name of the purchasing or receiving person or company, the name of the contact person(s), the address, the telephone and facsimile numbers, any e-mail contact information, and the date of the sale, number and description of the units sold/purchased, and the price.

(Discovery Order at 4, ¶ 10a (Docket No. 1971.).)] The Court also repeated its warning that the answers provided would be subject to penalties for perjury. (See Discovery Order at 3, 13.)

Despite the court's clear warnings, on November 6, 2009, Donald Bowers answered the Court-ordered request by saying essentially nothing. (See Discovery Responses at 3.) He did not disclose that WideBand Georgia received or took possession of any of the Infringing Products, nor that WideBand Georgia was a distributor of WideBand Massachusetts, despite the fact that such information would be clearly within his personal knowledge as the CEO and CFO of WideBand Georgia. (See id.) Donald Bowers' discovery responses were also false.

Moreover, to the extent Donald Bowers was not already named in the orders, his activities were done in active concert or participation with the parties named in the orders.

### ORDER

All of the evidence shows Donald Bowers' complete lack of regard for the jury verdict and the court's rulings. For the reasons set forth above, the court finds DONALD BOWERS in CONTEMPT OF COURT and ORDERS as follows:

1.      The August 5, 2009 TRO is hereby expanded to expressly include Donald Bowers. The court will, in a separate ruling, modify and expand the Amended Permanent Injunction to reflect the developments established in this contempt proceeding.

2.      Donald Bowers, and all those working in active concert or participation with Donald Bowers, shall immediately halt all development, sale, and/or marketing of all DialHD products, including in China.

3.      Donald Bowers shall arrange for and obtain the delivery to the United States, care of ClearOne or its designated agent, of all code and other design materials and intellectual

33

property covered by the Amended Permanent Injunction. He shall also provide written evidence to the court and ClearOne confirming that he has done so, no later than Friday, September 17, 2010.

4.　　The court hereby orders Donald Bowers to self-surrender to this court on Wednesday, October 13, 2010, at 10:00 a.m. for incarceration (or be subject to arrest through a bench warrant) unless and until he has proven to the court that he has (a) complied with the court's order to halt the development, sale and/or marketing of all DialHD products; (b) has made full and genuine disclosures and cooperated in discovery, and (c) the court has had the opportunity to review the results of such disclosures and discovery, and is satisfied that the information provided is sufficient to purge Donald Bowers of his contempt.

5.　　The court hereby schedules a hearing for the same time—Wednesday, October 13, 2010, at 10:00 a.m.—to determine whether Donald Bowers has purged himself of his contempt. If the court officially determines, before October 13, 2010, that Mr. Bowers has satisfied the conditions set forth in Paragraph 4(a)-(c) above, the court will strike the hearing through written notice to all concerned. Otherwise, by this order, Donald Bowers is obligated to attend the hearing in person.

6.　　The court finds that ClearOne is entitled to receive its reasonable attorneys' fees and costs incurred in pursuing the latest order to show cause against Donald Bowers. ClearOne shall submit an affidavit and documentation of the costs and attorneys' fees as soon as practicable but no later than Friday, September 17, 2010, after which the Magistrate Judge shall issue a ruling awarding those costs and fees reasonably incurred in relation to the court's April 7, 2010 OSC. The amount of any award shall be reduced to a judgment in favor of ClearOne

against Donald Bowers (the "Contempt Judgment"). The fees and costs, if reasonable and documented, will be awarded to compensate ClearOne for its direct losses incurred in bringing the actions of the contemnor to the attention of the court and obtaining the relief granted herein.

DATED this 13th day of August, 2010.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
Chief Judge